**IN THE COURT OF APPEALS OF IOWA**

No. 24-0364
Filed June 19, 2024

**IN THE INTEREST OF D.S.,**
**Minor Child,**

**T.S., Mother,**
        Appellant.
_____


        Appeal from the Iowa District Court for Lucas County, Erik I. Howe, Judge.


        A mother appeals the termination of her parental rights.  **AFFIRMED.**


        Deborah L. Johnson of Deborah L. Johnson Law Office, P.C., Altoona, for appellant mother.

        Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

        Dusty Clements of Clements Law & Mediation, Newton, attorney and guardian ad litem for minor child.


        Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

A mother appeals the termination of her parental rights to D.S., born in April 2019. After the mother left D.S. with a caretaker and disappeared "for days at a time," the Iowa Department of Health and Human Services (the department) raised concerns about the mother's failure to provide contact information while leaving D.S. under the supervision of others and ongoing concerns about the mother's substance use—methamphetamine use, specifically. As the mother left the child without any contact information and was unavailable for ten days in June 2022, D.S. was removed from her mother's custody and placed in the custody of the department. D.S. was adjudicated a child in need of assistance (CINA) in August.

The mother completed substance-use treatment in February 2023 and provided a negative drug screen that month. However, she returned a sweat patch in April and a urinalysis in September that were both positive for methamphetamine. In between those tests, she returned a negative urinalysis in June. The mother did not complete a second requested drug test in September or any drug testing after that time. She refused a request to test at the end of November but later admitted to using methamphetamine that month because she was depressed over the termination proceedings. To her credit, the mother participated intermittently in substance-use treatment and began mental-health treatment in October. Fully supervised visitation took place in public due to concerns about people passing through the mother's home that the department was not aware of and who had not completed background checks. At the April 2023 permanency hearing, the juvenile court granted the mother six more months to work towards reunification. But, in May, the department suspended visitation

between the mother and D.S. for safety reasons after the mother threw a drink and cursed at the family centered services (FCS) worker when she became upset. The mother picked up D.S. and attempted to run away; D.S. started crying and ran to the FCS worker for comfort.

In September, the State petitioned to terminate the mother's parental rights, and the juvenile court held a termination trial in December. At trial, the department social work case manager recommended termination because the mother "has been unable to maintain appropriate in her sobriety and has to demonstrate those appropriate behaviors to be able to care for her child." The department social work supervisor testified that the department had concerns about D.S.'s safety at supervised visitation prior to May and that the decision to suspend visitation was made by the department in consultation with the GAL. To suggest she was an appropriate caregiver, the mother testified that she lived with her paramour and his eight-year-old son and that her two other children—ages thirteen and fifteen—visited her on the weekends when they spent time at the home with her. When asked if she believed that her April sweat patch results were inaccurate, the mother answered, "Yes, I do." Yet, she acknowledged that she relapsed by using methamphetamine in September and November. She stated that she believed D.S. could safely be "put into [her] care because [she has] actually come a tremendously long way from where [she] was before." On cross-examination, the mother agreed that she has "anger issues and a problem when people are giving [her] a problem or anger issues to be had."

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) (2023) in February 2024, holding:

[W]hile [the mother] made efforts, [she] has not made sufficient progress under the case plan to resume custody for all the reasons discussed above. While it is always tempting when a parent, though unsuccessful, continues to make attempts to engage with services to allow for more time for reunification at some point the needs of the child must become paramount. The Court cannot make [D.S.] wait forever for [the mother] to finally achieve long-term sobriety.

The mother appeals.

## I. Standard of Review.

We review the termination of parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). "[O]ur fundamental concern" in review of termination proceedings "is the child's best interests." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We first consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the children's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.* We review only those steps that are actually raised and briefed on appeal by the parent challenging termination. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996).

### A. Statutory Ground.

First, the mother asserts that the State failed to prove the statutory ground for termination under Iowa Code section 232.116(1)(f) by clear and convincing evidence. She only disputes the fourth element: that D.S. could not be returned to her custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4); *In re M.W.*, 876 N.W.2d 212, 223 (Iowa 2016) (interpreting "at

the present time" to mean "at the time of the termination hearing").[1]  She argues that because other children occasionally stay in the same home as her—her paramour's child and her other children—it cannot be that D.S. cannot be safely returned to her custody.  But "a child cannot be returned to the parent . . . if by doing so the child would be exposed to any harm amounting to a new [CINA] adjudication."  *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992).  In this instance, we are considering whether D.S. could safely be returned to the mother's custody without exposure to any adjudicatory harm and not the unique circumstances of any other children that the mother periodically supervises.

Here, the juvenile court concluded that D.S. could not be returned to the mother's custody without exposure to harm based on the mother's unresolved substance use issues and failure to provide for D.S.'s safety or supervision.  The mother has not accepted responsibility for her methamphetamine use in April or November 2023.  *See In re A.B.*, 815 N.W.2d 764, 775–76 (Iowa 2012) (affirming termination of parental rights when a parent tested positive for methamphetamine but maintained it was a false positive and that they never used); *In re J.K.,* 495 N.W.2d 108, 112–13 (Iowa 1993).  While she denied the accuracy of her positive

---

[1] The other elements for termination under this paragraph are:
> (1) The child is four years of age or older.
> (2) The child has been adjudicated [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

At the time of the termination hearing, D.S. was four years old, had been adjudicated CINA, and had been removed from the mother's custody for the previous seventeen consecutive months.

test results, she also did not complete any requested testing after the positive test she acknowledged was accurate in September 2023. *See In re I.J.*, No. 20-0036, 2020 WL 1550702, at *2 (Iowa Ct. App. Apr. 1, 2020) ("We presume these missed drug tests would have resulted in positive tests."). And she admitted to using in November, the month before the termination trial.

Furthermore, her substance of choice leads to safety concerns for D.S. as "[a] parent's methamphetamine use creates a dangerous environment for children." *In re A.B.*, No. 21-1495, 2022 WL 108586, at *2 (Iowa Ct. App. Jan. 12, 2022) (citing *In re J.S.*, 846 N.W.2d 36, 37 (Iowa 2014)). Because of these safety concerns, in addition to inappropriate behavior during visitation including becoming violent and attempting to run away with D.S., the department suspended visits between the mother and D.S., and visits never resumed. We consider the lack of progression in visitation support for her inability to provide for D.S.'s safety. *See In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("[The mother] never progressed to unsupervised visits or trial home visits. Without this necessary progression, we cannot say the child[] could have returned to the mother's care."). Thus, D.S. could not have been safely returned to the mother's custody at the termination trial, and the statutory ground for termination was met.

**B. Best Interests.**

Second, the mother contends that "there were compelling reasons to maintain the parent-child relationship such that termination was not in the best interests of" D.S. Beyond stating that concept, the mother does not expound this argument further. Nevertheless, in looking to the best interests of the child, we "give primary consideration to the child's safety, to the best placement for

furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). As our case law provides, the defining elements in a child's best interests are the child's safety and need for a permanent home. *In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially). Here, for the reasons discussed above, we find that the mother is unable to provide for D.S.'s safety or physical, mental, and emotional needs, and her best interests support termination.

**C. Other Claims.**

Lastly, the mother makes a passing request for additional time within her best-interests argument, stating "it was not in the best interests of the child to terminate parental rights when a less restrictive outcome was available—the grant of a six month extension." She also appears to question the reasonable efforts at reunification made by the department by pointing to the department's failure to request names of family members on her side of the family for placement of D.S., meet with her monthly, or timely provide FCS reports. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (describing the reasonable-efforts requirement). Without any elaboration or citations to supporting authority, we find these arguments waived and do not address them further. *See id.* at 492 ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review."); *accord In re J.R.*, No. 22-1470, 2023 WL 2148760, at *3 (Iowa Ct. App. Feb. 22, 2023) (finding that "sprinkled mentions of an issue" do not properly raise the issue for our consideration).

We affirm the termination of the mother's parental rights to D.S.

**AFFIRMED.**